# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1581-24

M.W.M.,

    Plaintiff-Respondent,

v.

T.M.,

    Defendant-Appellant.

_____

Argued March 18, 2026 – Decided July 17, 2026

Before Judges Smith, Berdote Byrne and Jablonski.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, FM-02-0257-21.

Robert S. Cohen (Cohen Clair Lans Greifer & Simpson, LLP) of the New York bar, admitted pro hac vice, argued the cause for appellant (Einhorn Barbarito Frost Botwinick Nunn & Musmanno PC, Robert S. Cohen and Latoya D. Herring (Cohen Clair Lans Greifer & Simpson, LLP) of the New York bar, admitted pro hac vice, attorneys; Stephen P. Haller, Jennie L. Osborne, Matheu D. Nunn, Robert S. Cohen and Latoya D. Herring, on the briefs).

Allison P. Berecz argued the cause for respondent (Skoloff & Wolfe, PC, attorneys; Allison P. Berecz, of counsel and on the brief).

PER CURIAM

Defendant T.M. appeals from the motion court's order denying his motion to: replace his daughter M.M.'s psychologist; modify portions of the parties' settlement agreements; and award attorneys' fees.[1] Defendant also seeks reassignment of this matter on remand to a different judge.

For reasons which follow, we vacate the order and remand to the same judge for proceedings consistent with this opinion.

I.

Defendant T.M. and plaintiff M.W.M. were married in 2015, and had one child, M.M. The parties divorced on March 6, 2023, with their final judgment of divorce (FJOD) incorporating a marital settlement agreement (MSA) and a separate custody agreement.

The detailed thirty-six-page custody agreement established the parties' joint legal custody of M.M. in paragraph one. Paragraphs two and three outlined the roles of the professionals working with the family and ensured that no

---

[1] We refer to the parties using their initials to protect the minor's privacy. R. 1:38-3(d)(3). Further, the records below have been sealed pursuant to Rule 1:38-11.

professional could be terminated by the parties without a court order. One of the four professionals identified in the agreement was Dr. Kimberly S. Williams, a New York[2] licensed psychologist who served as the daughter's therapist and the parties' parenting coach. Paragraphs twenty and twenty-one established a comprehensive parenting time plan which accounted for the daughter's weekly school, vacation, holiday and birthday schedules, as well as specific drop-off and pick-up times.

The custody agreement governed various aspects of the parties' co-parenting arrangement. It required mutual agreement by the parties to change any important life activities related to M.M.'s well-being. Termination of a professional listed in the agreement is defined as a change in M.M.'s life requiring mutual agreement or a court order.

In May 2023 defendant filed an order to show cause (OTSC), alleging plaintiff violated the parties' custody agreement. He sought to modify the agreed-upon supervised parenting time for plaintiff. The court denied defendant's OTSC without prejudice and denied plaintiff's request for attorneys' fees. Five months later, in October 2023, defendant filed a second OTSC, again alleging that plaintiff had violated the custody agreement and further seeking to

---

[2] The record shows that Dr. Williams is now licensed to practice in New Jersey.

A-1581-24

change the parenting schedule of M.M. However, he later withdrew the OTSC with regard to the parenting schedule, and the parties agreed to a temporary change in the schedule at a settlement conference in December 2023.

In July 2024, defendant moved to terminate Dr. Williams as M.M.'s therapist, asking the court to replace her with "a new, culturally competent therapist." Defendant further sought: depositions of plaintiff, Dr. Williams, and the guardian ad litem (GAL); production of all communications from and to the GAL; and attorneys' fees. Plaintiff cross-moved for an order: modifying the agreements to change defendant's response time for certain requests; limiting the frequency of defendant's contacts with the professionals regarding non-major issues; ordering defendant to communicate with plaintiff solely via a parenting time application; ordering defendant to reimburse plaintiff for professional fees; and requiring defendant to establish a litigation fund to compensate plaintiff's attorneys for future litigation.

After argument, the court entered an order consolidating defendant's October 2023 OTSC, the July 2024 motion, and plaintiff's cross-motion. The order directed: M.M. could participate in activities she was engaged in if defendant failed to respond to such requests within forty-eight hours; defendant had to respond within forty-eight hours of plaintiff's request to schedule

appointments for M.M.; and defendant had to pay his financial obligations within one week of billing by a provider or plaintiff, as set forth in the MSA. The court then granted defendant's request to produce all of the GAL's communications, but denied the remainer of his requested relief. The court granted plaintiff's request to enforce the MSA but denied the balance of her cross-motion.

Thereafter, plaintiff sought attorneys' fees. On January 29, 2025, the court awarded plaintiff attorneys' fees in the amount of $100,158.55, making findings. The court accepted counsel's certification of services and found it was undisputed that defendant "is in a far better financial situation than" plaintiff, that both parties had the ability to pay counsel's fees, and that defendant's attempt to remove Dr. Williams "was beyond misplaced" and made in bad faith. The court found defendant's desire to remove Dr. Williams "was the catalyst for . . . this entire application, which has cost both parties thousands and thousands of dollars." Defendant appealed.

On appeal, defendant contends that the motion court committed error by: declining to terminate Dr. Williams and appointing a new therapist for M.M.; improperly modifying the custody agreement and MSA; and awarding plaintiff

attorneys' fees. Defendant also asks that the matter be assigned to a new judge on remand.

## II.

"Our review of Family Part orders is limited." Gormley v. Gormley, 462 N.J. Super. 433, 442 (App. Div. 2019). "We 'afford substantial deference to the Family Part's findings of fact because of that court's special expertise in family matters.'" Voynick v. Voynick, 481 N.J. Super. 207, 220-21 (App. Div. 2025) (quoting W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021)). Thus, a court's findings "are binding on appeal so long as [its] determinations are 'supported by adequate, substantial, credible evidence.'" Gormley, 462 N.J. Super. at 442 (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). A family court's legal determinations, however, are afforded no particular deference and are reviewed de novo. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020) (citing McGovern v. Rutgers, 211 N.J. 94, 108 (2012)).

## III.

At the outset, we note that,

> [t]here are obviously few judicial tasks which involve the application of greater sensitivity, delicacy and discretion than the adjudication of child custody disputes, which result in greater impact on the lives of those affected by the adjudication, and which require a higher degree of attention to the properly considered

A-1581-24

views of professionals in other disciplines. . . . That is also why the parties must be afforded every reasonable opportunity to introduce expert witnesses whose evaluation of the family situation may assist the judge in determining what is best for the children.

[J.G. v. J.H., 457 N.J. Super. 365, 373 (App. Div. 2019) (quoting Fehnel v. Fehnel, 186 N.J. Super. 209, 215 (App. Div. 1982)).]

Defendant first argues that the trial court erred by failing to remove Dr. Williams. Among other claims, defendant contends that Dr. Williams engaged in disqualifying conduct by: making disparaging comments about M.M., describing her as "a little rich girl"; not spending enough time counseling M.M.; failing to satisfactorily address defendant's concerns about M.M.'s co-sleeping arrangements at plaintiff's home; and failing to address M.M.'s nutritional and academic challenges.

Next, defendant argues that the trial court's order modifying the custody agreement to permit plaintiff to enroll M.M. in extracurricular activities or schedule medical appointments unless defendant responded to plaintiff's inquiries within forty-eight hours was not supported by the record and contradicted the custody agreement's terms, which called for mutual consent. Defendant makes a similar claim as to the trial court order modifying the MSA to compel defendant to pay financial obligations within one week, rather than

the fifteen days specified in the MSA. Defendant again argues that this modification was unsupported by the record and violated the clear terms of the agreement. In each instance, defendant contends that the trial court committed error by failing to conduct a plenary hearing.

We consider defendant's arguments through this procedural lens. "A thorough plenary hearing is necessary in contested custody matters where the parents make materially conflicting representations of fact." J.G., 457 N.J. Super. at 372. Thus, "[a] court, when presented with conflicting factual averments material to the issues before it, ordinarily may not resolve those issues without a plenary hearing. While we respect the family court's special expertise, a court may not make credibility determinations or resolve genuine factual issues based on conflicting affidavits." Ibid. (quoting K.A.F. v. D.L.M., 437 N.J. Super. 123, 137-38 (App. Div. 2014)).

On December 18, 2024, after a hearing which included testimony from two professionals[3], but neither party, the trial court issued its order. Citing its review of "the mountain of paperwork" submitted by both parties, the court

---

[3] Richard H. Weiner, the parties' mediator, and the court-appointed GAL both testified.

found no need for protracted argument. It found "there is [not] anything that needs to be said that hasn't been set forth" in the parties' filings.

The GAL testified that she could not offer an opinion about the termination of Dr. Williams, because she needed to conduct further investigation into defendant's alleged concerns. However, the trial court made findings that Dr. Williams was appointed after a robust vetting process, had a working relationship with M.M., and that removing her would be against the best interests of M.M. The court effectively made credibility findings concerning defendant without his sworn testimony, labeling defendant's claims as "self-centered," and not in M.M.'s best interest. The court rejected defendant's assertions that M.M. had expressed a desire to change therapists. Without hearing testimony from plaintiff, defendant, M.M., or Dr. Williams, the court determined that defendant's motion to remove the psychologist was brought in bad faith. The trial court analyzed modification of the two agreements in the same abbreviated manner, eschewing testimony from the central figures in this dispute: the parties, M.M., and Dr. Williams.

We disagree with the approach taken by the trial court in establishing the record it used to resolve the cross-motions. We conclude that the court's decision to forego a plenary hearing which incorporated the parties and their

A-1581-24

daughter, as well as their daughter's therapist, was a mistaken exercise of discretion. The record below contains genuine issues of material fact concerning the question of Dr. Williams' performance as a therapist and parent coach,[4] as well as on the questions of parental communication regarding M.M.'s activities and appointments. The significant and vigorously contested issues presented by the parties to the trial court warrant testimony from those directly involved. The trial court's determinations on witness credibility and the weight it chooses to assign to various aspects of their testimony will impact all issues in dispute here: termination of Dr. Williams, modification of the custody agreement, and modification of the MSA.

Consequently, we vacate the order of December 18, 2024 in its entirety and remand for a plenary hearing. We express no opinion regarding the outcome of this matter upon remand. Because we vacate the December 18, 2024 order, we also vacate the trial court's January 29, 2025 order awarding attorneys' fees.

Finally, defendant requests the matter be assigned to a different judge on remand. It has long been recognized we have the authority to assign a matter to

---

[4] Although not raised on appeal, we note with concern a potential conflict in Dr. Williams serving dual roles: one as M.M.'s therapist and unbiased, third-party confidante, another as parenting coach to both parents. On remand, the trial court should consider whether Dr. Williams performing both roles serves M.M.'s best interests.

a different judge upon remand. Graziano v. Grant, 326 N.J. Super. 328, 349 (App. Div. 1999). However, we only exercise this "when there is a concern that the trial judge has a potential commitment to his or her prior findings." Ibid.; see also N.J. Div. of Child Prot. & Permanency v. D.P.-Z., 483 N.J. Super. 549, 582-83 (App. Div. 2026). We agree with the approach taken by the Graziano court, and we adopt it here:

> Although we have the authority to direct the assignment of the case to a different judge, we believe that authority should be sparingly exercised. This case does not clearly call for the assignment of the matter to another judge. In addition, consideration must be given to the fact that, to some extent, it would be counterproductive to require a new judge to acquaint himself or herself with the litigation. Rather, we believe that an application for disqualification pursuant to Rule 1:12-1 should initially be made to the motion judge [themselves].
>
> [Graziano, 326 N.J. Super. at 350 (citation reformatted).]

Carefully considering the extensive record in this matter, we discern no actions or words by the judge which indicate "potential commitment to [their] prior findings." Id. at 349. "Bias cannot be inferred from adverse rulings against a party." Strahan v. Strahan, 402 N.J. Super. 298, 318 (App. Div. 2008). We note that, "[i]f the judge believes that [they are] committed to the findings [they have] previously made, or there is any other reason which might preclude a fair

11

and unbiased hearing and judgment or which might reasonably lead counsel or the parties to believe so, R. 1:12-1(f), we have every confidence that the judge will recuse [themselves]." Id. at 350. Given the well-settled principles expressed above, we decline defendant's request to assign the matter to another judge on remand.

Any of the remaining claims not addressed here lack sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

The orders of December 18, 2024 and January 29, 2025 are vacated in their entirety. The matter is remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

12

A-1581-24